ERNEST E. BLAUVELT AND ELIZABETH A. BLAUVELT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SAMUEL S. EVANS AND EMILY M. EVANS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 1023, 1024.   Promulgated September 21, 1944.

*Carter T. Louthan, Esq.,* for the petitioners.
*F. X. Gallagher, Esq.,* for the respondent.

### OPINION.

DISNEY, *Judge*: These proceedings, involving the redetermination of deficiencies of $102.22 and $244.17 for 1940 in the respective docket numbers, were consolidated for hearing and report. The facts are found as set forth in a stipulation of facts.

The petitioners in each docket are husband and wife. The husbands owned shares of stock of the Chapultepec Land Improvement Co., a New Jersey corporation, which in 1940 had no earnings or profits accumulated after February 28, 1913, within the meaning of section 115 (a) (1) of the Internal Revenue Code, and had no earnings or profits accumulated before March 1, 1913. It had no earnings or profits during 1940 within the meaning of section 115 (a) (2) of the code; instead, it had a loss computed without regard to profits representing appreciation in value of property accrued before March 1, 1913.

On January 1, 1940, the corporation had an accumulation of earnings or profits consisting entirely of increase in value of property accrued before March 1, 1913, and realized thereafter. During 1940 it realized an additional amount from the same source.

During the taxable year the corporation made certain distributions to its stockholders out of earnings or profits representing increase in value of property accrued before March 1, 1913, and realized thereafter within the meaning of section 115 (b) of the Internal Revenue Code. No part of the distributions was in complete or partial liquidation of the shares of stock of the corporation, or dividends.

In joint returns filed by the respective petitioners for 1940 with the collector at Newark, New Jersey, amounts to represent the excess of the distributions over the adjusted bases of the stock were reported as gain resulting from the exchange of a capital asset held more than two years and 50 percent thereof was taken into account in computing the net income.

In his determination of the deficiencies, the respondent included in the income of the respective petitioners the amount by which all the distributions received by petitioners exceeded their adjusted bases for the stock. The grounds for his action were that the distributions, having been paid out of appreciation in value of real estate accrued before March 1, 1913, the excess was taxable as gain under section 22 (a) of the Internal Revenue Code, as interpreted in section 19.111–1 of Regulations 103. The petitioners allege in their petitions that no part of such excess constitutes taxable income and that they overpaid their income tax liability for 1940.

The example given to illustrate the application of section 19.111–1 of Regulations 103, followed herein by the Commissioner, covers stock purchased subsequent to February 28, 1913. There is no evidence here to establish the time petitioners acquired their stock, but the respondent assumes the purchase to have been after March 1, 1913, and, since petitioners merely argue that the time of acquisition of their stock is immaterial, and do not claim purchase prior to that date, we consider the stock purchased sometime after February 28, 1913.

The question is whether corporate distributions out of earnings representing increase in value of property accrued prior to March 1, 1913, and not made in a partial or complete liquidation of the corporation, constitute taxable income to the extent that the amounts exceed the adjusted basis for the stock.

The Revenue Act of 1918 permitted distribution, exempt from tax, of earnings prior to March 1, 1913, after the distribution of profits accumulated since February 28, 1913. Sec. 201 (b). The Commissioner held, following *Lynch* v. *Hornby*, 247 U. S, 339, that distributions out of increase in value of property accrued prior to March 1, 1913, constituted taxable income. L. O. 1073, 5 C. B. 26. Section 201 (b) of the Revenue Act of 1921 provided that:

    * * * any earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, may be distributed exempt from the tax, after the earnings and profits accumulated since. February 28, 1913, have been distributed. If any such tax-free distribution has been made the distributee shall not be allowed as a deduction from gross income any loss sustained from the sale or other disposition of his stock or shares unless, and then only to the extent that, the basis provided in section 202 exceeds the sum of (1) the amount realized from the sale or other disposition of such stock or shares, and (2) the aggregate amount of such distributions received by him thereon.

The act contained no provision for taxing any gain arising from the distribution of pre-March 1, 1913, increase in property values. The words "or increase in value of property accrued" in section 201 (b) of the 1921 Act were inserted in the bill by the Senate. The amendment was made to remove doubt in existing law as to the right of a corporation to distribute tax-free the increase in value of property accrued prior to March 1, 1913, after earnings accumulated after that date have been distributed. (H. R. Rept. 486 (C. B. 1939–1 (Part 2) 206).)

The same section of the Revenue Act of 1924 contained a provision to the same effect, with the following clause at the end of the first sentence quoted above: "but any such tax-free distribution shall be applied against and reduce the basis of the stock provided in section 204." [1] Subsequent revenue acts have contained like provisions. Sec. 201 (b), Revenue Act of 1926; sec. 115 (b), Revenue Acts of 1928, 1932, 1934, 1936, 1938, and Internal Revenue Code. The provision as to allowance of loss to the extent of excess of basis and distributions over sale price was not included in the Revenue Act of 1924 or in later acts.

---

    [1] Section 201 (b), Revenue Act of 1924, reads :

"For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the basis of the stock provided in section 204."

Article 1543 of Regulations 62, promulgated under the Revenue Act of 1921, provided that a distribution made by a corporation out of "increase in value of property accrued prior to March 1, 1913, is exempt from tax, even if in excess of the cost or other basis * * * of the stock on which declared." Regulations under the 1924, 1926, 1928, and 1932 Acts contained provisions to the same effect. Art. 1543, Regulations 65 and 69; art. 643, Regulations 74 and 77. Respondent concedes that the amounts here were not taxable under regulations in effect under revenue acts prior to the 1934 Act.

Article 115-3 of Regulations 86, promulgated under section 115 of the Revenue Act of 1934, reads in part as follows:

A distribution made by a corporation out of earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, is not, as such, subject to tax, but shall be applied against the basis of the stock. For the treatment of gains from the stock see article 111–1.[2]

Article 111–1 contains an example to the effect that where a taxpayer purchases stock subsequent to February 28, 1913, having an adjusted basis on January 1, 1934, reduced by reason of receipts and distributions, including distributions which, under section 113 (b) (1), "either were tax-free or were applicable in reduction of basis," and in 1934 received additional distributions of the same nature, any excess of the 1934 distributions over the stockholder's adjusted basis is taxable as a gain from the stock. Subsequent regulations have contained like provisions. Art. 111–1, Regulations 94 and 101; art. 19.111–1, Regulations 103.

It thus appears that the regulations under the 1932 and prior acts did not tax such excess distributions, but regulations promulgated under subsequent acts, beginning with 1934, without any change in the statute, have taxed the amounts as gain to stockholders who purchased their stock after February 28, 1913. No specific provision appears to have been made in the regulations for taxing the gains to pre-March 1, 1913, stockholders.

The respondent, as already pointed out, taxed the excess distributions as gain under section 22 (a). Petitioners insist that section

---

[2] ART. 111–1. *Computation of Gain or Loss.*—* * *

Even though property is not sold or otherwise disposed of, gain (includible in gross income under section 22 (a) as "gains or profits and income derived from any source whatever") is realized if the sum of all the amounts received which are required by section 113 (b) to be applied against the basis of the property exceeds such basis. * * * The provisions of this paragraph may be illustrated by the following example:

*Example:* A purchased certain shares of stock subsequent to February 28, 1913, for $10,000. On January 1, 1934, A's adjusted basis for the stock had been reduced to $1,000, by reason of receipts and distributions described in section 113 (b) (1) (A) and (D). He received in 1934 a further distribution of $5,000, being a distribution described in section 113 (b) (1) (D). This distribution applied against the adjusted basis as required by section 113 (b) (1) (D) exceeds that basis by $4,000. The amount of the excess, namely, $4,000, is a gain realized by A in 1934 includible, as a gain from the stock, in gross income in his return for that calendar year. In computing gain from the stock, as in adjusting basis, no distinction is made between items of receipts or distributions described in section 113 (b). * * *

22 (e) provides otherwise, that is, provides that the governing provision is section 115 (b), and that it exempts the excess from tax.

Section 22 (a) of the 1938 Act defines gross income as including gains from dealings growing out of ownership in property or from any source whatever. Corresponding sections of prior acts contained like provisions. Section 22 (e) of the Revenue Act of 1938 provides that "Distributions by corporations shall be taxable to the shareholders as provided in section 115."

In *Helvering* v. *Griffiths*, 318 U. S. 371, the Commissioner contended that dividends of common stock on like stock were taxable under section 22 (a) of the Revenue Act of 1938, which defined gross income as including gains, profits, and income derived from dividends. The same act contained a' provision that distributions made by a corporation to its shareholders in its stock should "not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution." Sec. 115 (f) (1). The Court said, *inter alia:*

\* \* \* Unless the tax asserted by the Commissioner has been authorized by Congress it fails of validity before we even reach the constitutional question. To reach that question we must decide whether Congress intended by § 115 (f) (1) to do what *Eisner* v. *Macomber* squarely held that it could not. We cannot find that it did.

The Government cannot sustain its position on a literal reading of § 115 (f)· (1). Unlike the Revenue Act of 1916, it does not state that all stock dividends are taxable. Instead, § 115 (f) (1) qualifies the generality of § 22 (a) by providing \* \* \*.

The Court, after saying that the Government's position was in conflict with the administrative and legislative history of the "statute," reviewed the history not of section 22 (a), but of section 115 (f) (1), in order to determine congressional intent. The situation is not essentially different here, except that section 115 (b) is involved instead of section 115 (f) (1). Under the provisions of section 22 (e), section 115 (b) qualifies the general term "gains" in section 22 (a). If the "gain" or excess over basis is to be taxed, we must find the authority by interpreting section 115 (b).

The report of the Committee on Ways and Means, No. 179 (C. B. 1939–1 (Part 2) 249), contains the following remarks respecting the change made in the statute in 1924:

In subdivision (b) of the existing law it is provided that tax-free distributions out of earnings and profits accumulated prior to March 1, 1913, shall be applied against and reduce the basis of the stock only for the purpose of determining a loss from the subsequent sale of the stock; such a distribution is not applied against the basis of the stock for determining the gain from its sale. The proposed bill in section 201 (b) provides that a distribution out of earnings and profits accumulated prior to March 1, 1913, shall be applied against the basis of the stock for the purposes of determining both gain and loss from its subsequent sale.

The theory which causes the allowance of the receipt of the dividend free of tax is that this distribution, being out of earnings accumulated prior to March 1, 1913, constitutes a return of capital to the stockholder. If it is treated as a return of capital for purposes of taxation, it should manifestly be considered a return of capital for purposes of determining his capital investment in the stock, and the resulting gain or loss from its subsequent sale.

The report of the Senate Finance Committee, No. 398, contains like remarks, except for unimportant changes, and in addition, the following:

* * * If he has had part of his capital returned to him, obviously he can not have that part so returned still invested in the stock. Unless the tax-free distribution is applied in reduction of the basis, the result is that the taxpayer is allowed a return of capital twice because of the same item of capital.

Respondent's position is that the exemption stated in section 115 (b) was subject to the condition that the distribution be applied in reduction of basis and that when the basis has been recovered by such application, the exemption ceases to operate, with the result that the excess constitutes taxable gain.

We find nothing in the statute, or its legislative history, disclosing congressional intent to go that far. The purpose of the 1924 amendment, as clearly shown by committee reports, was to prevent a stockholder from recovering his basis in the stock more than once, as would be possible without application of tax-free distributions to cost or other basis. Under the 1921 Act such distributions were taken into account for loss deduction purposes only upon the sale or other disposition of the stock. The 1924 Act required the application of the distributions to basis upon their receipt for the purpose of computing both loss and gain upon subsequent sale or other disposition of the stock. Here, there was no sale or other disposition of the stock, merely a distribution of earnings out of unrealized gain or property prior to March 1, 1913, not in liquidation proceedings.

The intent of Congress controls in the construction of taxing statutes and where doubt exists as to the intent of a provision, the meaning may be ascertained from other provisions of the revenue law. *Hellmich* v. *Hellman*, 276 U. S. 233; *Burnet* v. *Guggenheim*, 288 U. S. 280; *Helvering* v. *Stockholmes Enskilda Bank*, 293 U. S. 84; *White* v. *United States*, 305 U. S. 281.

The intent of Congress not to exercise its power to levy a tax on the excess distribution here involved is indicated by provision made for the taxation of other corporate distributions.

Section 115 (d) of the Internal Revenue Code reads as follows:

(d) OTHER DISTRIBUTIONS FROM CAPITAL.—If any distribution made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. * * *

Thus, we see that Congress by section 115 (d) provided the very provision for which the respondent here argues, that is, that the excess of corporate distribution over basis shall be taxable; but it is clearly provided that such is true only if the distribution is "*not* out of increase in value of property accrued before March 1, 1913." (Italics supplied.) This situation is made even more striking because of the fact that section 115 (d) in its present form first appeared in the Revenue Act of 1924, almost immediately following the first appearance, in its present form, of the provisions of subsection (b). In other words, the same Congress which provided for tax exemption of distributions from increase of property values accrued prior to March 1, 1913, also, in the second next subsection provided for taxation of the excess of distribution over basis, an element not found in subdivision (b), and so provided if the distribution is *not* out of increase in value of property accrued before March 1, 1913. Yet, the respondent is urging that in both cases such excess is taxable. Though the provision as to the distribution being one not out of increase in value of property accrued before March 1, 1913, is not set up as a proviso, the effect of subsection (d) is, in substance, that distributions shall be taxable as to the excess over base, *provided that* it is not one made out of increase in value of property accrued before March 1, 1913. The subdivision also provides that its subject does not apply if the distribution is a dividend, yet the language providing that distribution may result in taxation of excess over base is no more expressly made inapplicable to dividends than it is to distributions from property value accrued before March 1, 1913. It is not without significance, also, that subdivision (d) is headed "Other Distributions from Capital," which appears to be by way of contrast to subsection (b) (since the provisions of (c) are particularly excepted in (d)), so that a distinction appears to be drawn by the two subsections as to increases in value of property accrued before March 1, 1913, subsection (b), simply providing that it may be distributed exempt from tax, but applied in reduction of base, while subsection (d) as to *other* distributions from capital goes further, and provides for taxation of the excess. We notice, too, in subsection (b) that not only is it provided that the pre-March 1, 1913, increase in property value "may be distributed exempt from tax," but that the idea of tax exemption is again repeated in the expression "but any such *tax-free* distribution shall be applied against and reduce the adjusted basis." (Italics supplied.) The respondent argues that the language beginning with "but" and last quoted states a condition upon which permission to distribute exempt from tax is granted, that when the condition can no longer be complied with (because application against base has been completed, all base having been recovered) the exemption fails. However, in the repetition of the concept of tax exemption

in "tax-free distribution," following the word "but," we discern intent that the distribution be tax-free, even though applied against and reducing the adjusted basis. The effect of respondent's view is that the distribution is tax-free only to the extent that it is applied against and reduces the basis; but, since we find the earlier expression that the increase in value of property before March 1, 1913, may be distributed exempt from tax almost immediately followed by the statement that "such tax-free distribution shall be applied against and reduce the adjusted basis," we consider the whole distribution from such increase in value prior to March 1, 1913, tax-free, even though in part applied against, and to reduce, the basis.

The position of the respondent is in substance that as to purchasers after February 28, 1913, the effect is the same as under subsection (d) (except that apparently ordinary gain is considered to result), yet that subsection noticeably does not contain the expression "tax free" found in subsection (b). Moreover, it is noteworthy that in subsection (d), in order to provide for taxation of distribution to the extent of excess above basis, Congress said the excess should be taxable "in the same manner as a gain from the sale or exchange of property." No such expression is found in subsection (b). The lack of any such reference in subsection (b) to equivalency to sale or exchange indicates that taxation of excess over basis was not contemplated by that subsection. If taxable thereunder, in what manner? "In the same manner as a gain from the sale or exchange of property" as under subsection (d), or otherwise, that is, in all cases as ordinary gain?

The respondent also argues, in substance, that one purchasing corporate stock prior to March 1, 1913, and owning it on or after that date may capitalize or recover tax-free, either actual cost or March 1, 1913, value, whichever is higher, and in line therewith that the owner of stock on March 1, 1913, may recover his March 1, 1913, value tax-free by reducing his basis; but that it was not intended to "apply to the owner of stock who acquired it at bargain price after March 1, 1913." We see no reason to assume that the purchaser of stock after March 1, 1913, acquires it at a bargain price, so as to distinguish his position from that of the purchaser of stock prior to March 1, 1913; rather, it appears reasonable that any stock which carries with it the right to participate in increase in value of property accrued before March 1, 1913, will reflect such rights in its sale price. In other words, the purchaser after February 28, 1913, appears in general likely to pay for the privilege of standing in the shoes of the pre-March 1, 1913, owner. In any event the respondent's argument does not serve to indicate a distinction between the position of a purchaser before and one after February 28, 1913; for the former too might have a basis, in fair market value on March 1, 1913, which was less than his proper share

of pre-March 1, 1913, increase in property value and, therefore, might not, by using such base, actually recover all of such accrued property values.

We are unable to conceive a sound distinction between the position of the owner prior to March 1, 1913, and the purchaser from him thereafter—and the respondent does not say that his argument here is applicable to the owner prior to March 1, 1913. We have held, where there was distribution after March 1, 1913, of appreciation in value of property prior to March 1, 1913, that the amounts were treated as returns of capital without regard to the time of the acquisition of the stock. *Frederick Ayer, Jr., et al., Trustees*, 37 B. T. A. 767. The present contention, however, was not there raised.

The Revenue Act of 1921 contained the express provision for exemption from tax of distributions from pre-March 1, 1913, increases in property values; and Regulations 62, article 1543, following the statute, equally expressly recognized such exemption, "even if in excess of the cost or other basis." The Revenue Act of 1924 and the later acts have continued to contain the same phrase as to such increases in value being distributed exempt from tax and tax-free. After the Revenue Act of 1921, the respondent did not attribute to Congress until 1934, when Regulations 103, section 19.111–1 was promulgated, the intent to tax such a corporate distribution above basis. The committee reports in 1924 (Ways and Means Committee Rept., 68th Cong., 1st sess., p. 179) specifically note that, as to section 201 (d), "the amount by which such distribution exceeds the basis of the stock constitutes taxable income," but such statement does not appear as to subsection (b). The difference is significant. Moreover, as seen from the above quotation from the report of the Committee on Ways and Means as to subsection (b), that subsection applied to distributions from "earnings and profits accumulated prior to March 1, 1913" against the basis of the stock only for the purpose of determining both gain and loss *from its subsequent sale*. It thus appears that nothing was intended as to gain or loss in the absence of subsequent sale of stock, that is, merely because there was distribution in excess of basis.

After considering carefully the legislative history of this matter, the language of section 115 (b), providing in terms for distribution "exempt from tax" and "tax-free" increase in value accrued before March 1, 1913, and the more particular provision of section 115 (d) providing otherwise as to "other distributions from capital," we conclude and hold that Congress has made no provision for taxing as gain amounts such as are involved herein, and that the provisions relative to application of distributions against basis contain nothing upon which to bottom such taxation, contrary to the definite language providing the exemption. The general definition contained in section 22 (a) is by section 22 (e) particularly made inapplicable here.

In our opinion, the change on this subject in regulations in 1934 by Regulations 86, article 111–1, was without foundation in statute. The successor article 111–1, Regulations 103, followed herein by the respondent, is to that extent invalid.

It follows that the amounts in question were not properly included in the gross income of the petitioners and that they improperly overpaid their taxes in paying upon the theory of a capital gain and to the extent of 50 percent thereof.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MURDOCK, MELLOTT, and ARNOLD, *JJ.*, dissent.